UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DUSTIN PATRICK CURTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-237-JCH |
| | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Dustin Patrick Curtis, a prisoner, for leave to commence this civil action without prepayment of the required filing fee. The Court will grant the motion, and assess an initial partial filing fee of $40.00. *See* 28 U.S.C. § 1915(b)(1). In addition, for the reasons discussed below, the Court will dismiss this case.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement for the months of January and February, showing an average monthly deposit of $200.00 and an average monthly balance of $112.59. The Court will therefore assess an initial partial filing fee of $40.00, which is twenty percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is factually frivolous if the facts alleged are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Allegations are clearly baseless if they are "fanciful," "delusional," or "fantastic." *Id.*

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### The Complaint

Plaintiff is a pretrial detainee at the St. Charles County Justice Center. He brings this action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), 42 U.S.C. § 1983, the Privacy Act, the Freedom of Information Act, the Stored Communications Act, the Federal Wiretapping Act, the Administrative Procedures Act, and state tort law against the following defendants: the Federal Bureau of Investigation, "Unknown FBI

Agents," the United States of America, the Drug Enforcement Agency, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and "Unknown IL Police."

Review of the State of Missouri's online docketing system shows that plaintiff is a defendant in a criminal case currently pending in the circuit court for St. Charles County, where he is facing charges of kidnapping, rape or attempted rape, domestic assault, and unlawful use of a weapon. *See State v. Dustin Patrick Curtis*, Case No. 1811-CR00257-01 (11th Jud. Cir. 2018).

All of plaintiff's claims for relief stem from a bizarre series of events that began in 2016 and continued until he was arrested on January 20, 2018. Plaintiff's allegations are as follows.

In June or July of 2016, plaintiff noticed that a brown SUV was parked behind his house every day. Then, other vehicles began following him everywhere he went, including to the mall, to visit family and friends, and to church. Plaintiff came to realize that he was being constantly surveilled by FBI agents. On different occasions, plaintiff confronted the agents or snuck up on them, but they would never give him any information. One day, plaintiff went to the "local police" to ask them why the FBI was following him, and "they looked my name up in some sort of shared law enforcement database, and then told me, 'there's nothing we can do, Mr. Curtis. It's not us, trust me. This 'thing' is bigger than us, and it's out of our hands.'" (Docket No. 1 at 5-6).

Around September or October of 2016, the FBI also began intercepting plaintiff's telephone calls, placing "electronic bugs" in his home, and placing GPS tracking devices on his vehicles. *Id.* at 6. Plaintiff used his phone to photograph the FBI agents as they followed him, but when he went to review the photos at the end of the day, they had all been mysteriously deleted from his phone.

3

A woman who worked as a secretary for plaintiff's business began bringing drugs to plaintiff's house, even though plaintiff himself had stopped using drugs. One day, plaintiff asked this woman to drive him somewhere. When he looked up, he "noticed a helicopter flying back and forth over my home, several vehicles in the back of my home with FBI agents sitting in them, and a man walking 2 dogs, acting suspiciously, in front of my home, and a Charter Communications van sitting idle in front of my home." *Id.* at 6. On the way to his destination, he asked the woman to turn around and go back to his house. When they got there, he kicked her out of the van and told her she was fired. Plaintiff then searched his van and found a "large quantity of marijuana" inside. *Id.* He "took pictures of it and videotaped it" but "those pictures were mysteriously deleted from my phone also." (Docket No. 1 at 6). Plaintiff destroyed the marijuana, but before he did so he "noticed that it was the type of marijuana that law enforcement uses to set people up." *Id.* Plaintiff then went inside his house and locked himself in. The helicopter continued to fly back and forth over his house, and the Charter Communications van was still sitting outside, with an FBI agent in the driver's seat.

Plaintiff began using drugs again because of the FBI's constant surveillance. He writes: "One night, high on drugs, stressed out because of what was going on, I decided to drive around town." *Id.* Numerous SUVs began following him. Plaintiff drove into Illinois, and was pulled over by local police. This was done because the FBI called them and requested their assistance. As soon as he was pulled over, "numerous black SUVs filled with FBI agents surrounded my vehicle." *Id.* at 7. A "black officer" pulled plaintiff from his car and assaulted him and a "white cop" did not try to stop him. (Docket No. 1 at 7). The FBI agents remained in their vehicles. Unknown officers searched his vehicle, planted a GPS tracking device inside, and left the scene.

Plaintiff went to Puerto Rico, hoping the FBI would leave him alone. However, he noticed he was being followed by someone in a Jeep. While plaintiff was at the beach, FBI agents searched his hotel room, and installed approximately 18 bugs.

One day, plaintiff was driving to the airport and noticed the same Jeep that had been following him, and a "Puerto Rican individual, presumably an FBI agent, looking at me with binoculars." *Id.* at 8. Plaintiff followed this person "to some security office at the airport," but he did not come out of the office. *Id.* Plaintiff waited for hours and talked to many local officers, but no one would tell him anything. Plaintiff was ultimately questioned by a DEA agent, but learned nothing about the FBI's surveillance operation.

Plaintiff remained in Puerto Rico for another three months, during which time he visited different islands. Unmanned drones followed plaintiff everywhere he went. The FBI also followed him everywhere, and intercepted his telephone conversations.

Plaintiff later went to Miami, and the FBI followed him. Plaintiff returned to Missouri and ended up serving 90 days in jail. After he was released he went to Nebraska, and the FBI followed him. Plaintiff returned to Missouri and continued to use drugs because he was stressed out. One day, all of his work vehicles shut down at once because the FBI had installed "kill switches" on them. *Id.*

**Discussion**

As noted above, an action is frivolous, and subject to summary dismissal pursuant to § 1915(e), if the allegations therein are clearly baseless. *Denton*, 504 U.S. at 32-33. In this case, all of plaintiff's claims are based upon the bizarre series of events described above, which include being constantly monitored by the FBI, stalked and harassed by federal agents in different states within the United States and in Puerto Rico, being monitored by helicopters and

5

unmanned drones, being monitored by devices planted in his home, hotel room, and vehicles, having pictures that may substantiate his claims mysteriously deleted from his phone, and so forth. In addition, plaintiff alleges this was all done as part of a government conspiracy against him. The Court has considered the complaint as a whole and has given it the benefit of a liberal construction, and finds the factual allegations to be delusional and fantastic, and therefore clearly baseless. *See id.* The Court therefore concludes that this action is factually frivolous, and will dismiss it as such. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *see also Tooley v. Naplitano*, 586 F.3d 1006, 1009–10 (D.C. Cir. 2009) (claims of constant surveillance by government were "flimsier than doubtful or questionable ... essentially fictitious); *Strong v. United States*, 2012 WL 202780 (S.D. Cal. Jan.23, 2012) (Plaintiff's claim that, *inter alia*, he was being surveilled by unmanned drones was dismissed as frivolous); *Raiford v. FBI*, 2010 WL 6737887 (D. S.C. Nov.17, 2010) (claims of stalking by aircraft were frivolous); *Marshall v. Green*, 2010 WL 1959514 (W.D. Ky. May 17, 2010) (claims of "bizarre conspiracy theories" related to government stalking were frivolous).

Even if the allegations in the complaint were non-frivolous, plaintiff's claims against "Unknown FBI Agents" and "Unknown IL Police" would be subject to dismissal. Generally, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit identification of the party after reasonable discovery. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). In this case, plaintiff's allegations regarding the fictitious defendants are not sufficiently specific to permit them to be identified after reasonable discovery, and the fictitious defendants are both unidentified and indeterminate in number. This is impermissible. *See Estate of Rosenberg v.*

*Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible). Finally, plaintiff cites multiple federal statutes and states he brings claims against the United States and the federal agency defendants pursuant thereto. However, he sets forth only conclusory allegations that merely parrot the elements of the claims. He therefore fails to state a claim upon which relief may be granted against the United States or any of the federal agency defendants.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $40.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 2) is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 30th day of May, 2018.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE